# William Rowson's Estate.  George Ernest Rowson's Appeal.

*Will—Testamentary capacity.*

A decree refusing an issue devisavit vel non will be sustained where the evidence of the attending physician of the testator, the attorney who prepared the will and was present at its execution, and the executor, a son of the testator, is in effect that the testator at the time he signed the will was rational and understood what he was doing, while the contestants' testimony that the testator was unconscious on the day the alleged will was signed is contradicted by other parts of their own testimony, by the fact that some of them witnessed the will, and by the fact that the will was signed by the testator.

Argued April 6, 1896.  Appeal, No. 397, Jan. T., 1895, by George Ernest Rowson, from decree of O. C. Phila. County, April T., 1894, No. 26, refusing an issue devisavit vel non. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.  Affirmed.

Appeal from register of wills admitting will to probate.

From the record it appeared that William Rowson died on March 8, 1894; that on March 12, 1894, a paper writing dated March 5, 1894, alleged to be the last will of said decedent, was admitted to probate by the register of wills of Philadelphia county, and letters testamentary thereon were granted to Thomas Arthur Rowson, a son ; that a petition was then filed in the orphans' court by George Ernest Rowson, the appellant, setting

forth the above facts and also that the petitioner did not have any knowledge of the probate until after the said paper had been admitted by the register of wills, and asking that an issue devisavit vel non be awarded, directed to the court of common pleas to determine the questions of fact, stated in the opinion of the Supreme Court.

The case was duly tried and the trial judge awarded an issue devisavit vel non, to which award exceptions were filed by Thomas Arthur Rowson, and upon argument before the court in banc the decree awarding an issue was vacated, whereupon the appellant took this appeal.

The opinion of the court by ASHMAN, J., was as follows :

The element of undue influence which was assigned as ground for awarding an issue is eliminated from this inquiry because its existence was not shown by even a scintilla of evidence ; and the sole remaining question is that which relates to the want of testamentary capacity.  The disputed will was written by the testator himself, and was a virtual counterpart of a prior will executed at a time when his mental vigor was confessedly unimpaired.  By both papers he gave his real estate, valued originally at $9,000, to his son the proponent, charged in the earlier will with fourteen legacies of $500 each, to testator's children and grandchildren, which were reduced by the will in controversy to $450 to meet the corresponding reduction in market values of property.  The former will was not shown to have been destroyed, and would be revived if the present one should be overturned ; so that in any event the portions of the legatees would probably be about the same.  Neither this fact, however, nor the fact that the will was both wise and equitable, would validate its execution at a time when the testator lacked testamentary ability.  On that point the inquiry is narrowed to a period of ten days ; the testator had a stroke of apoplexy on Monday, February 26, another on Thursday, March 1, and he died on Thursday, March 8.  His will was executed on Monday, March 5.  The testimony on the part of the contestants was that he was unconscious during all or most of this time.  This word unconscious, which was employed by every one of those witnesses in rotation, is really expressive of an opinion rather than a fact, and it necessarily depends for its force upon the

ability of the utterer to form an intelligent belief. Coming from a medical practitioner it has a definite and even conclusive meaning, while in the mouth of an ignorant, and what is worse, a prejudiced observer, it may be as hopelessly vague as a maxim of Tupper's Philosophy. The few facts which the witnesses gave were not in line with their theory. One of the daughters testified that the testator was unconscious from February 26, until March 8, when he died; but as he walked to the hospital and back to his house on February 27, she concluded to date the period of his unconsciousness from March 1. She then said that she believed he was unconscious most of the time, and she finally admitted that he recognized persons on March 3. Yet this lady subscribed his will as a witness on March 5. One of the sons declared that the testator went to bed on March 1, became unconscious that night and remained unconscious until the end. He added that there was a period of revival on Saturday, because, to use his own words, " I felt to think that he asked for beer," on that day. The witness afterward thought that his father was conscious on Friday. Another son gave to the decedent while he lay in this continuous stupor a pipe to smoke. The subscribing witness, a woman, who saw the decedent once or twice a day, said that he recognized no one on Monday, the day of signing, and that he lay motionless. She could not remember however whether he addressed her by name, and to the query whether he did not say when spoken to about subscribing witnesses, " Yes, let them all sign it," she replied, ."I could not be positive to say so." When asked further whether she herself had not repeated those words as coming from him, her explanation was " I cannot remember positively, to say I did not say it, for it is out of my memory." Another witness, also a daughter, was positive that her father ". was per- fectly unconscious " on the day of signing the will and on the day preceding that act. As to her, three witnesses declared that she sat at the bedside during the execution of the will, and repeated aloud the whispered answers of her father to ques- tions put to him by counsel. She, too, could only reply that she did not remember having done so. In contrast with these discordant narratives and palpable evasions, the testimony pre- sented by the proponent is conspicuous at least for its simplicity. It is not less valuable because it was given in part by an un-

willing witness. The attending physician was called by the contestants. His statement was that the condition of the testator had so far improved on Sunday that he was able to smoke his pipe; that he remained as well on Monday, and when seen by the witness about an hour after the execution of the will, he recognized his visitors, answered inquiries, and, as the doctor put it, was in a condition to understand what was said to him and what he himself desired to do in ordinary affairs. The testimony of the counsel who supervised the signing and attesting of the will was still more emphatic. The testator, he said, conversed with difficulty but intelligently; expressed his assurance that the will was all right, because he had written it himself, and when asked as to subscribing witnesses, replied "Let them all sign it," alluding to the persons who were then in the room. When the counsel inquired whether he knew fully what he was doing, the testator answered with some show of irritation, "What are you trying to do; are you trying to make a lunatic out of me?" His voice was indistinct, and his words were repeated by the daughter, who, as we have seen, afterwards swore that at that moment he was wholly unconscious. Soon after the will was executed, an old friend of the testator was shown into his room. The testator recognized him at once, addressed him by his christian name, and in a low tone added some other words of greeting, which the daughter repeated to this witness as she had done to the former. The executor testified with equal distinctness to the declarations of the testator, and to his mental capacity at the time he put his signature to the will. This is the whole case. The question which really confronts us, is not of the credibility of the witnesses, which it may be conceded lies wholly within the province of a jury, but whether the facts deposed by one and the same witness are not entirely at variance with the belief, which he would foist into the controversy as a substantive fact, but which in reality is the crude offspring of prejudice, or malice, or of both. The gist of the contestants' complaint was unwittingly disclosed when the contents of the will were first made known to them. It was not that the testator was imbecile or overpowered by undue influence, but that the brother was executor and appeared to be a favored beneficiary. The suggestion was even ventured that the signature made in the feebleness of sickness was not

genuine, although the objectors had seen the testator in the very act of writing it.  We could save ourselves a good deal of irksome detail and perhaps some measure of responsibility, by sending this and cases more or less like it, to a trial court, but we would fail in our duty.  The evidence, in our judgment, would not warrant a verdict against the will, and we therefore sustain the exceptions and vacate the decree awarding an issue.

FERGUSON, J., dissents.

*Error assigned* was decree of the court.

*E. Cooper Shapley, Edwin C. Nevin* with him, for appellant, cited on the question of testamentary capacity: Erwin's Est., 35 W. N. C. 477; Miller's Est., 166 Pa. 97; Schwilke's App., 100 Pa. 628; Graham's App., 61 Pa. 43; Cozzens's Will, 61 Pa. 196; De Haven's App., 75 Pa. 337; Harrison's App., 100 Pa. 458; Appeal of Knauss et al., 114 Pa. 10; Sharpless's Est., 134 Pa. 250; Foster's Est., 142 Pa. 62; Douglass's Est., 162 Pa. 567; Miller's Est., 166 Pa. 97.

*J. W. Goheen, G. E. Schlegelmilch* with him, for appellee, cited on the question of testamentary capacity: Wilson v. Mitchell, 101 Pa. 495; Shaver v. McCarthy, 110 Pa. 339; Leech v. Leech, 21 Pa. 69; Thompson v. Kyner, 65 Pa. 368; Carter's Est., 1 Dist. Rep. 69; Doyle's Est., 47 Leg. Int. 107; Appeal of Knauss et al., 114 Pa. 10; Herster v. Herster, 122 Pa. 239; Foster's Est., 142 Pa. 62; Wainwright's App., 89 Pa. 220; Lynch's Est., 48 Leg. Int. 232; Shotwell's Est., 1 Dist. Rep. 257; Cozzens's Will, 61 Pa. 196; Vandruff v. Rinehart, 29 Pa. 232; Napfle's Est., 134 Pa. 492.

PER CURIAM, April 13, 1896 :

In this application for an appeal from the decision of the register of wills, admitting to probate, as the last will of William Rowson, deceased, a certain paper writing, etc., the learned auditing judge awarded an issue devisavit vel non to determine the following questions of fact:

First. Whether the signature to said paper writing is the signature of the said William Rowson.

Second.  Whether the said William Rowson was at the time of the execution of said instrument of sound disposing mind, memory and understanding, and of sufficient mental capacity to make a valid will and testament.

Third.  Whether the said William Rowson was induced to make said paper writing by undue influence of Thomas Arthur Rowson and others.  And why said probate should not be set aside and the letters testamentary granted to Thomas Arthur Rowson, as executor thereof, be revoked.

Exceptions to the adjudication having been filed, the court in banc, after carefully considering the testimony on which the issue was awarded, came to the conclusion that the evidence was not of such a character as would justify a trial judge in sustaining a verdict against the will.  The exceptions were therefore sustained and the decree awarding an issue vacated.  Hence this appeal.

Without attempting to summarize the testimony adduced before the auditing judge, or undertaking to notice at length the nature and character thereof, as is done in the opinion of the orphans' court, our consideration of the evidence, properly bearing on the questions involved, has satisfied us that the conclusion reached by the court is correct, and that its decree should be sustained.

Decree affirmed and appeal dismissed, with costs to be paid by the appellant.